TAY v. GREEN

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:TAY v. GREEN

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

TAY v. GREEN2022 OK 38Case Number: 119984; Comp. w/119927Decided: 04/19/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 38, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
 

ORDER
Upon consideration of the respondents' Petition for Rehearing or Clarification filed on April 27, 2022, it is hereby ordered that the Petition for Rehearing or Clarification filed by the respondents be granted for the limited purpose of:
1) striking Section 4(15) of the Initiative Petition because it references, relies on and interrelates to Section 5 which we previously struck in Tay v. Green, 2022 OK 38;
2) striking the phrase "and individual criminal record expungement" from the gist at issue because we removed the criminal record expungement process when we struck Section 5; and
3) directing the proponents of the measure, who have the duty to submit the measure to the Oklahoma Secretary of State, to submit a revised measure which complies with our opinion in Tay v. Green, 2022 OK 38. Title 34 O.S. 2011 §9; Okla. Sup. Ct. Rules, 5 O.S. 2011, App. 1 Rule 1.194.
The petitioner's motion for rehearing filed April 29, 2022, is hereby denied. In all other respects the opinion will remain unchanged.
DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 9th DAY OF May, 2022.
/S/ACTING CHIEF JUSTICE
CONCUR: DARBY, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, JJ.
CONCUR IN RESULT: KANE, V.C.J., ROWE, KUEHN, JJ.

PAUL TAY, Petitioner,v.JED GREEN and KRISTOPHER MASTERMAN, Respondents.

ORIGINAL PROCEEDING TO DETERMINE THE CONSTITUTIONAL VALIDITY OF STATE QUESTION NO. 819, INITIATIVE PETITION NO. 433.

¶0 This original proceeding determines the legal sufficiency of State Question No. 819, Initiative Petition No. 433, which seeks to create a new article to the Oklahoma Constitution, Article 32, which would legalize, regulate, and tax the recreational use of marijuana by adults age 21 years and older. Petitioner, Paul Tay, alleges that State Question No. 819, Petition No. 433 is unconstitutional for four reasons: (1) it is preempted by federal law; (2) signatures gathered on and elections held on tribal land would be invalid; (3) it violates the doctrine of non-retroactivity in post-conviction proceedings; and (4) the proposed gist is insufficient. Upon review, we hold Petitioner has not established clear or manifest facial unconstitutionality regarding the proposition's provisions; however, because the gist is insufficient and misleading with respect to Section 5, we invoke the severability clause in Section 9 and strike Section 5 and any reference to the stricken provision in the gist. State Question No. 819, Initiative Petition No. 433, as severed, is legally sufficient for submission to Oklahomans for voting.

STATE QUESTION NO. 819, INITIATIVE PETITION NO. 433, AS SEVERED, IS LEGALLY SUFFICIENT.

Paul Tay, Tulsa, Oklahoma, pro se Petitioner.
Stephen Cale, Cale Law Office, Tulsa, Oklahoma, for Respondents.

Gurich, J.
Facts & Procedural History
¶1 On October 28, 2021, Respondents Jed Green and Kristopher Masterman, filed State Question No. 819, Initiative Petition No. 433 (SQ 819) with the Oklahoma Secretary of State. SQ 819 proposed creation of a new constitutional article, Article 32, which would legalize, regulate, and tax the recreational use of marijuana by adults age 21 years and older. The Oklahoma Secretary of State published notice of the filing on November 4, 2021. Petitioner timely brought this challenge on November 5, 2021, in accordance with 34 O.S.2021, § 8(B), https://govt.westlaw.com/okjc (follow hyperlink titled "General Provisions").1 Between January 14th and February 17th, 2022, Petitioner filed ten motions for summary or declaratory judgment.2 On February 28, 2022, Petitioner filed a notice of intention to appeal and a request for a stay of signature gathering.3
 
Proposed Measure
 
¶2 Proposed Article 32 contains eleven (11) sections. Section 1 safeguards medical-marijuana patient, caregiver, and business licensees against any limiting construction of Article 32.
¶3 Section 2 grants personal rights and protections. Section 2 establishes the right "to grow, purchase, transport, transfer, receive, prepare and consume marijuana and marijuana products," subject to form and quantity limitations. It also permits the purchase, possession, and use of marijuana paraphernalia. Additionally, Section 2 provides general protections against arrest, prosecution, penalty, discipline, or discrimination by state and local government based solely on conduct permitted under Article 32. It expands on these general protections with regard to employment, medical care, parental rights, licensure rights, and due process and equal protection rights. Further, Section 2 protects financial-service providers from liability solely for providing services to any marijuana business licensed by the State of Oklahoma. It also requires the marijuana regulatory agency to comply with privacy laws. Lastly, Section 2 addresses local and homegrow rights: it prohibits additional licensing or fees related to homegrows; limits local-government regulation thereof; allows landlords to restrict homegrows; allows landlords and businesses to restrict indoor smoking or vaping of marijuana or marijuana products--but not other forms of lawful possession or consumption; and prohibits any statute, ordinance, or regulation regarding vaping or smoking cannabis that is more restrictive than those regarding tobacco use.
¶4 Section 3 authorizes the medical-marijuana regulatory agency to regulate recreational marijuana and authorizes medical-marijuana business licensees to commence recreational-marijuana business of the same business-license type without additional fee, license, or registration requirements. Moreover, Section 3 establishes when and to whom dispensaries may begin recreational-marijuana sales and requires the marijuana regulatory agency to adopt regulations authorizing residential delivery.
¶5 Section 4 establishes a framework for taxes and expenditures. It charges an excise tax of fifteen percent (15%), subject to lowering by the Oklahoma legislature, on marijuana and marijuana products purchased by persons who are not patient or caregiver licensees. On products purchased by patient or caregiver licensees, Section 4 imposes a seven percent (7%) excise tax, which incrementally drops to zero percent (0%) over one year. Further, Section 4 instructs the Oklahoma Tax Commission (OTC) to collect and direct taxes to a fund managed by the marijuana regulatory agency. It requires the agency to use the tax revenue to pay operational costs and allocates remaining revenue amongst various organizations, programs, and funds for certain expenditures. Subject to state or federal action permitting interstate or international export of marijuana and marijuana products, Section 4 instructs the OTC to collect a three percent (3%) wholesale tax and deposit the tax revenue in the State General Revenue Fund.
¶6 Section 5 regards retroactivity. It requires the Oklahoma Department of Corrections to publish within 180 days a list of persons currently incarcerated for marijuana-related state-court convictions. It permits currently incarcerated persons whose conduct would be allowed under Article 32 to request resentencing, modification, or reversal. It allows like persons who have completed their sentences to request dismissal, expungement, and vacatur of their conviction. Further, it requires the court to presume satisfaction of the criteria for the request and "without delay resentence or reverse the conviction as legally invalid, modify the judgment and sentence, or expunge and vacate the charges." Moreover, it states that expungement "shall automatically restore" firearm-ownership and voting rights. By its terms, Section 5 is applicable to juvenile cases "as if the juvenile had been of legal age at the time of the offense." Lastly, it safeguards petitioners from any construction that would diminish or abrogate other available rights or remedies or limit legislative authority regarding same.
¶7 Section 6 sets state protocol should the federal government legalize marijuana. It provides that Oklahoma's restrictions would not exceed federal restrictions and Oklahoma's quantity limitations would be raised to the federal maximum. It also provides that the Oklahoma Bureau of Narcotics and Dangerous Drugs will retain its enforcement authority, subject to the legislature's authority to change the responsible agency. Finally, Section 6 states that if the federal government allows interstate transfer, Oklahoma will, too, and authorizes the legislature and governor to permit same.
¶8 Section 7 provides for judicial review and instructs that all rules or regulations made pursuant to Article 32 must comply with the Oklahoma Administrative Procedures Act. Section 8 empowers the legislature to modify specific provisions of Article 32 by supermajority vote and others by simple-majority vote. Section 9 is a severability clause. Section 10 provides that Article 32 will be effective immediately upon passage. Section 11 contains a list of definitions.
Standard of Review
¶9 Oklahoma citizens "may protest the sufficiency and legality of an initiative petition." In re State Question No. 807, Initiative Petition No. 423, 2020 OK 57, ¶ 11, 468 P.3d 383, 388 (per curiam) (internal citations omitted). Upon protest, the Court must review the petition to ensure its compliance "with the rights and restrictions established by the Oklahoma Constitution, legislative enactments, and this Court's jurisprudence." Id., 468 P.3d at 388 (internal citations omitted). The Court's pre-election review is restricted to determining whether the proposed measure contains "clear or manifest facial constitutional infirmities," and the protestant bears the burden of proof. Id. ¶ 12, 468 P.3d at 388 (internal citations omitted).
Analysis
¶10 To the extent we addressed preemption and the validity of state elections in Indian country in companion case No. 119,927, we apply our holdings therein, and reject Petitioner's identical arguments.4 We review the following issues: federal preemption by provisions of (1) the Gun Control Act of 1968, codified at 18 U.S.C. § 922(d)(3), (g)(3) (2018); (2) federal racketeering law, codified at 18 U.S.C. § 1956(a) (2018); § 1957 (2018); and (3) gist sufficiency.5
 
Federal law does not preempt SQ 819.
 
¶11 An exercise of state police power will not be found "preempted by federal action unless that is the clear and manifest purpose of Congress." In re State Question No. 807, 2020 OK 57, ¶ 16, 468 P.3d at 389. Congress communicates that purpose in three ways: (1) expressly, (2) by conveying its intent to occupy a field, or (3) by enacting legislation that directly conflicts with state law.
¶12 We first consider the provisions of section 9226 and conclude that it does not preempt SQ 819.7 Congress did not expressly preempt States' ability to legislate gun-control laws in the Gun Control Act of 1968, 18 U.S.C. §§ 921--931 (2018) (the GCA); nor did Congress implicitly convey its intent to occupy the field of gun control therein.8 A direct and positive conflict exists where "compliance with both federal and state law is a physical impossibility . . . or where state law stands as an obstacle to the accomplishment and execution of Congress' full purposes and objectives." Id., ¶ 21, 468 P.3d at 390 (internal citations omitted). Though SQ 819 would authorize conduct subject to federal prosecution, compliance with state law and § 922(d)(3) and (g)(3) would be possible because SQ 819 does not mandate possession of firearms or ammunition by recreational-marijuana users. See id. ¶¶ 23-24, 468 P.3d at 390-91 (analyzing, under the physical-impossibility standard, whether actual conflict would exist between proposed state law and the Controlled Substances Act (CSA)). Further, SQ 819 does not impede the accomplishment and execution of Congress' purposes in enacting the GCA. Congress passed the GCA "to strengthen Federal Controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.R. Rep. No. 1577, at 2 (1968) as reprinted in 1968 U.S.C.C.A.N. 4410, 4411. SQ 819 does not attempt to alter or weaken the GCA or limit enforcement of federal law by federal agents.9 Any immunity created by SQ 819 applies to prosecution under state law, not federal law. Further, it applies to possession and use of marijuana and marijuana products, not to other activities addressed by the GCA. Moreover, because the federal government cannot force States to criminalize recreational marijuana possession or use, it cannot prevent States from decriminalizing recreational marijuana possession or use.
¶13 Likewise, SQ 819 is not preempted by 18 U.S.C. § 1956(a)10 and § 195711. Petitioner does not explain his claim that § 1957 preempts SQ 819, but he asserts SQ 819 conflicts with § 1956(a) because it will require state officials to participate in money laundering through its excise-tax provisions. In 2020, Petitioner made a similar argument in his challenge to SQ 807; the Court determined that "government entities are not subject to the criminal law provisions of RICO because they cannot form the necessary malicious intent for the predicate acts." In re State Question No. 807, 2020 OK 57, ¶ 38, 468 P.3d at 394. The same is true with respect to § 1956(a) and § 1957. Moreover, Petitioner assumes the State would be involved in a transaction involving "specified unlawful activity." § 1956(a)(1); § 1957(a). Section 1956(c)(7) defines "specified unlawful activity."12 That definition references the CSA--first, regarding offenses against a foreign nation for financial transactions in the United States, § 1956(c)(7)(B)(i), and second, regarding "any act or acts constituting a continuing criminal enterprise." § 1956(c)(7)(C). But the CSA provides immunity to "any duly authorized officer of any State, territory, political subdivision thereof, the District of Columbia, or any possession of the United States, who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances." 21 U.S.C. § 885(d) (2018). Therefore, the State's enforcement of Article 32 would not meet the definition of "specified unlawful activity."
¶14 Further, the illegality of an activity does not bar its taxation. In re State Question No. 807, 2020 OK 57, ¶ 39, 468 P.3d at 395 (collecting cases). Because the State's excise tax would be lawful, so would its appropriation of tax revenue. Id. ¶ 40, 468 P.3d at 395 ("[I]t is axiomatic that if the states and federal government are permitted to tax illegal activity, they are permitted to use the resulting revenue."). Thus, § 1956(a) and § 1957 do not preempt SQ 819.
Challenge to the Gist
¶15 Under 34 O.S.2021, § 3, https://govt.westlaw.com/okjc (follow hyperlink titled "General Provisions"), "[a] simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet." The gist statement "must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition." In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75, ¶ 14, 797 P.2d 326, 330; see also In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30, ¶ 6, __ P.3d __ (declaring the "'gist must present an outline, or rough sketch, of what the initiative petition will accomplish,'" informing prospective signers "of the 'potential effects' so those signers understand the changes that would be made to Oklahoma's statutory code." (internal citations omitted)). The proposed gist follows:
The Oklahoma Marijuana Regulation and Right to Use ActThis constitutional amendment: grants the right to use marijuana to persons 21 years of age and older; establishes individual patient, professional, privacy, employment, medical, parental, student, firearm ownership, state-licensure, and due process rights; has a fiscal impact and pays for itself with taxes on marijuana sales; sets a tax rate of 15% on marijuana sales, except for persons with a medical marijuana patient or caregiver license; directs surplus revenue to pay for education, local and military veterans mental health programs, programs for families with disabled children, rural water infrastructure, law enforcement training, research, marijuana waste clean-up, and agricultural damage insurance, and individual criminal record expungement; adapts to future federal legalization of marijuana, including a 3% wholesale export tax; allows persons with minor marijuana convictions to apply for resentencing, vacatur and/or expungement; provides for judicial review, severability and provides definitions of terms used in this amendment; becomes effective upon passage and provides time for implementation.
(emphasis added).
¶16 Petitioner argues that SQ 819's gist is insufficient and misleading because it does not warn voters of federal criminal consequences for marijuana possession and use. We rejected Petitioner's argument regarding SQ 818 because the gist sufficiently explained changes to be made to Oklahoma law. Likewise, we reject Petitioner's argument that the gist must describe federal consequences. However, we conclude the gist insufficiently informs voters of Section 5's effect on Oklahoma law.
¶17 The gist fails to describe two significant effects of Section 5: (1) the bypass of judicial process for resentencing, modification, reversal, dismissal, expungement, or vacatur; and (2) the automatic and absolute restoration of firearm-ownership and voting rights upon completed expungement. As written, the gist misleads potential signatories to believe SQ 819 adheres to established judicial process. In reality, it does not provide for a procedure whereby the State may object to resentencing, modification, reversal, dismissal, expungement, or vacatur. Section 5(4) provides: "Upon receiving a petition, the court shall presume the petitioner satisfies the criteria . . . and without delay resentence or reverse the conviction as legally invalid, modify the judgment and sentence, or expunge and vacate the charges."13 Similarly, the gist misleads potential signatories about its effect on a petitioner's firearm-ownership and voting rights. The gist explains that SQ 819 "establishes individual . . . firearm ownership . . . rights" but does not address voting rights nor the process for restoring either the possession of firearms or voting rights. Section 5(5) provides: "A completed expungement [of marijuana related felony convictions] shall automatically restore the person's rights to possess and use firearms. A completed expungement of marijuana related felony convictions shall also automatically restore the person's right to vote." Not only does this provision deviate from established practice by automatically restoring these significant rights, it further delegates authority to the trial court dependent only upon a completed expungement. Moreover, restoration is absolute, unqualified, and does not take into account whether a petitioner has other non-marijuana-related felony convictions.14 The above-mentioned omissions and scant explanations regarding fundamental deviations from established practice, render the gist deceitful and insufficiently informative with respect to the effect of Section 5 on Oklahoma law. 15 Under the severability clause in Section 9, the Court severs Section 516 and strikes the portion of the gist referencing its provisions.17
 
¶18 The remaining gist, although not all-encompassing,18 informs potential signatories "'of what the measure is generally intended to do'" without "'the taint of misleading terms or deceitful language.'" In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44, ¶¶ 6, 7, 465 P.3d 1259, 1262, 1263; see also In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶ 3, 376 P.3d 250, 252 ("The gist . . . is 'not required to contain every regulatory detail so long as its outline is not incorrect.'" (internal citation omitted)). Thus, we assume original jurisdiction and hold SQ 819, as severed, is legally sufficient for submission to Oklahomans for voting.
 

INITIATIVE PETITION NO. 819, STATE QUESTION NO. 433, BY SEVERING SECTION 5 AND PORTIONS OF THE GIST REFERENCING SECTION 5, IS LEGALLY SUFFICIENT TO SUBMIT TO THE PEOPLE OF OKLAHOMA.

DARBY, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, AND GURICH, JJ., CONCUR;

KANE, V.C.J. DISSENTS (BY SEPARATE WRITING);

ROWE, J. CONCURS IN PART; DISSENTS IN PART (BY SEPARATE WRITING), KUEHN, J., CONCURS IN PART; DISSENTS IN PART.

FOOTNOTES

1 This proceeding is companion with Petitioner's similar challenge to State Question No. 818, Initiative Petition No. 432.

2 From January 14, 2021 to January 18, 2021, Petitioner filed eight motions for summary or declaratory judgment based on state elections in Indian country, preemption, logrolling, limitations of medical marijuana licenses under OAC 310: 681-1-3, and interpretation of Article 1, § 3 of the Oklahoma Constitution. Petitioner's amended application for this Court to assume original jurisdiction raises each issue, except logrolling. On February 10, 2022, Petitioner filed another motion for summary or declaratory judgment based on state interests in Indian country; Petitioner had also raised this issue in his amended application. On February 17, 2022, Petitioner moved for summary or declaratory judgment, asking the Court to take judicial notice of federal case law to aid its interpretation of Article 1, § 3 of the Oklahoma Constitution. Petitioner had opportunity to present his claims in this Court. We deny Petitioner's motions which request the same relief as his amended application. To the extent Petitioner raises any new challenge by way of motion, it is untimely under 34 O.S. § 8(B), which provides:
It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition, and shall include notice that any citizen or citizens of the state may file a protest as to the constitutionality of the petition, by a written notice to the Supreme Court and to the proponent or proponents filing the petition. Any such protest must be filed within ten (10) business days after publication. A copy of the protest shall be filed with the Secretary of State.

3 We also deny Petitioner's request for a stay.

4 Tay v. Green, 2022 OK __, __ P.3d __.

5 As noted, Petitioner also argued that Section 5 of SQ 819 violates the doctrine of non-retroactivity in post-conviction proceedings. Ultimately, we will sever Section 5 because the gist insufficiently and misleadingly fails to describe its effects upon Oklahoma law. Therefore, we will not review this additional challenge to Section 5.

6 Petitioner anchored his preemption argument upon the following provisions of 18 U.S.C. § 922:
(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person--

(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))[.]
(g) It shall be unlawful for any person--
(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))
[. . .]
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

7 SQ 819 addresses firearm-ownership rights in two sections.
Section 2 provides, in part:

(19) No conduct permitted under this Article shall be the basis for the denial, revocation or suspension of any state-issued license, including drivers' licenses, concealed carry permits, occupational or professional licensing.
[ . . . ]
(21) No licensee of the agency responsible for regulating marijuana shall be denied the right to own, purchase, possess or use a firearm, ammunition, or firearm accessories solely on the basis of conduct permitted under this Article.
(22) No state or local agency, municipal or county governing authority shall restrict, revoke, suspend or otherwise infringe upon the right of a person to own, purchase or possess a firearm, ammunition, or firearm accessories or any related firearm license or certification solely on the basis of conduct permitted under this Article.
(23) No state or local agency, municipal or county governing authority shall enforce or assist in enforcing a federal law that prohibits or restricts firearm use or ownership solely on the basis of conduct permitted under this Article.
Section 5 provides, in part:

(5) Nothing in this section shall be construed to diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant. The provisions of this section shall apply equally to juvenile cases as if the juvenile had been of legal age at the time of the offense. A completed expungement shall automatically restore the person's rights to possess and use firearms. A completed expungement of marijuana related felony convictions shall also automatically restore the person's right to vote.

8 21 U.S.C. § 927 provides:
No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

9 Because § 922 references the CSA, we note that SQ 819 similarly does not impede the accomplishment and execution of Congress' purposes in enacting the CSA. See In re State Question No. 807, 2020 OK 57, ¶¶ 26--27, 30, 34, 468 P.3d at 391--93 (concluding same regarding a similar proposition). A contrary conclusion would violate principles of federalism. See Prigg v. Pennsylvania, 41 U.S. 539, 541 (1842) ("[I]t might well be deemed an unconstitutional exercise of the power of interpretation, to insist that the states are bound to provide means to carry into effect the duties of the national government, nowhere delegated or instructed to them by the Constitution."). The anti-commandeering doctrine bars Congress from appropriating state power for federal purposes. See generally Prigg, 41 U.S. 539; Printz v. United States, 521 U.S. 898 (1997); Murphy v. NCAA, __ U.S.__, 138 S.Ct. 1461 (2018). Congress may greatly depend on States to police and regulate controlled substances under the standards established by the CSA, but a State's decision to do so according to a different, yet complementary state standard, does not frustrate Congress' purposes in enacting the CSA.

10 18 U.S.C. § 1956(a)(1) provides:
Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
(B) knowing that the transaction is designed in whole or in part--
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under State or Federal law,
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

11 § 1957 punishes anyone who, in certain circumstances, "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." § 1957(a).

12 § 1957(f)(3) defines the term "specified unlawful activity" by "the meaning given in section 1956."

13 Recently, this Court upheld the sufficiency of the gist of State Question No. 820, Initiative Petition No. 434--a proposition that also seeks to legalize, regulate, and tax adult-use marijuana. See In re: State Question No. 820, Initiative Petition No. 434, 2022 OK 30, __ P.3d __. There, the gist sufficiently described the effect of SQ 820's retroactivity provisions. Id. ¶ 6, __ P.3d at __. The gist explained: "It would provide a judicial process for people to seek modification, reversal, redesignation, or expungement of certain prior marijuana-related judgments and sentences." This explanation was sufficient because SQ 820 did not attempt to bypass the established judicial process regarding modification, reversal, redesignation, or expungement. With respect to any qualifying "person currently serving a sentence for conviction . . . who would not have been guilty of an offense or who would have been guilty of a lesser offense under this Act had it been in effect at the time of the offense," SQ 820 would require the court to "presume the petitioner satisfies the criteria [for resentencing, modification, or reversal] and without delay" grant the request "unless the State opposes the petition or alleges that granting the petition would pose an unreasonable risk of danger to an identifiable individual's safety." If the State objects, SQ 820 provides that the petitioner is "entitled to a hearing on the record, including the opportunity to question witnesses and present evidence" and "[t]he State shall bear the burden of proving, by clear and convincing evidence, that the petitioner does not satisfy the criteria [for resentencing, modification, or reversal] or that granting the petition would pose an unreasonable risk of danger to an identifiable individual if alleged." With respect to any qualifying "person who has completed his or her sentence for a conviction . . . [and] who would not have been guilty of an offense or who would have been guilty of a lesser offense under this Act had it been in effect at the time of the offense," the judicial process to "have a conviction dismissed, expunged, and vacated as legally invalid or redesignated as a civil infraction" is the same, except that "[u]nless requested by the applicant, no hearing is necessary . . . ." Unlike SQ 820, SQ 819 would not provide judicial process for the State to rebut the presumption or otherwise oppose the granting of the petition--a significant deviation from established judicial process under Oklahoma law..

14 SQ 820 did not address voting rights. Though it addressed firearm-ownership rights, its effect thereon is much different than that of SQ 819. In keeping with the trial courts' power and authority, SQ 820 did not automatically restore firearm-ownership rights upon the filing of a judicial order, like expungement. Further, its effect on firearm-ownership rights was prospective only:
A person shall not be denied by the state or local government the right to own, purchase or possess a firearm, ammunition, or firearm accessories based solely on conduct that is addressed and permitted by this Act. No state or local agency, municipal or county governing authority shall restrict, revoke, suspend or otherwise infringe upon the right of a person to own, purchase, or possess a firearm, ammunition, or firearm accessories or any related firearms license or certification based solely on conduct that is addressed and permitted by this Act.

15 The misleading nature of the gist is compounded by including reference to "judicial review," following the portion of the gist that references Section 5.

16 The Court may view as severable any provisions that are not "integral parts of the petition." In re Initiative Petition No. 315, State Question No. 553, 1982 OK 15, ¶ 5, 649 P.2d 545, 548. An integral part of a proposition is a part "which could not be severed without defeating the whole." In re Initiative Petition No. 358, State Question No. 658, 1994 OK 27, ¶ 11, 870 P.2d 782, 787. Because the proposition would not be defeated without Section 5, Section 5 is severable under Section 9. Section 9(1) provides:

The provisions hereof are severable, and if any part or provision hereof shall be void, invalid, or unconstitutional, the decision of the court so holding shall not affect or impair any of the remaining parts or provision hereof, and the remaining provisions hereof shall continue in full force and effect.

17 The Court strikes the following portion of the gist: "allows persons with minor marijuana convictions to apply for resentencing, vacatur and/or expungement."

18 The gist does not mention impairment testing, workplace policy, and legislative-amendment procedure.
 

 

KANE, V.C.J., dissenting:
¶1 I dissent to any ruling that the legalization of marijuana is within the purview of the State, for the reasons I have previously set forth in In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30, __ P.3d __ (Kane, V.C.J., dissenting).
 

 

ROWE, J., concurring in part, dissenting in part:
¶1 I concur with the Court's decision to assume original jurisdiction. I must dissent, however, from the Court's holding that State Question No. 819, Initiative Petition No. 433 ("SQ 819") is constitutionally sufficient to submit to the people of Oklahoma for the same reasons I set forth in In re State Question No. 820, Initiative Petition 434, 2022 OK 30. SQ 819 is preempted by federal law and, thus, conflicts with the Oklahoma Constitution
¶2 The right to an initiative petition is the first power reserved for the people of Oklahoma under Article 5, § 2 of the Oklahoma Constitution.1 Our prior decisions make clear that the right of initiative is precious and warrants zealous protection. In re State Question No. 807, Initiative Petition 423, 2020 OK 57, ¶ 10, 468 P.3d 383, 388-89. The right of initiative, however, is not absolute; any citizen may protest the sufficiency or legality of an initiative petition. Id. ¶ 11, 468 P.3d at 389. When such a protest is made, this Court must review the petition to determine whether it complies with the Oklahoma Constitution, legislative enactments, and our own jurisprudence. Id.
¶3 Article 1, § 1 of the Oklahoma Constitution states, "The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." Likewise, the federal Supremacy Clause set out in the second paragraph of Article VI of the United States Constitution states:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.
Pursuant to these provisions, when a potential conflict between state and federal law arises, the state law is preempted. In re State Question 807, 2020 OK 57, ¶ 17, 468 P.3d at 390. Federal law has identified three forms of preemption that may arise from federal action: express preemption, field preemption, and conflict preemption. Id. ¶ 17, 468 P.3d at 389.
Express preemption occurs when a federal statute includes a provision stating that it displaces state law and defining the extent to which state law is preempted. Field preemption occurs when Congress expresses an intent to occupy an entire field, such that even complementary state regulation in the same area is foreclosed. Finally, conflict preemption occurs when there is an actual conflict between state and federal law.
Id. (internal citations omitted).
¶4 The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, the federal law which governs the use and trafficking of controlled substances, including marijuana, explicitly addresses the issue of federal preemption of state law:
No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.
21 U.S.C. § 903. Section 903 makes clear that the CSA was not intended to occupy the field to exclusion of state law with respect to regulating the use and trafficking of controlled substances. However, Section 903 does provide that the CSA preempts state law in instances where a "positive conflict" arises.
¶5 A "positive conflict" arises either when it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives. See Hillsborough City, Fla. v. Automated Med Labs, Inc., 471 U.S. 707, 713 (1985). Even if the changes proposed in SQ 819 were to become law, it does not appear that compliance with state and federal law would be impossible. SQ 819 does not, for instance, contain any mandates that would require Oklahomans to violate the provisions of the CSA.
¶6 The passage of SQ 819 would, however, clearly present an obstacle to the accomplishment and execution of Congress's full purposes and objections expressed in the CSA. The purpose of the CSA was "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzalez v. Raich, 545 U.S. 1, 12 (2005). Marijuana is considered a Schedule I controlled substance under the CSA. 21 C.F.R. § 1308.11(d)(23). It is illegal for any person to manufacture, distribute, or dispense marijuana and also illegal for any person to possess marijuana with the intent to manufacture, distribute, or dispense it. 21 U.S.C. §§ 841(a)(1), 844(a).
¶7 If SQ 819's proposed amendments become law, there will unquestionably be a proliferation in the cultivation, manufacture, distribution, dispensation, and recreational use of marijuana in Oklahoma. These outcomes are hardly hypothetical. With these activities sanctioned and licensed by the State of Oklahoma, it would be virtually impossible for federal law enforcement to accomplish Congress's objective in the CSA to control the production, sale, and use of controlled substances.
¶8 When we confronted this issue in the past, it was asserted that the CSA could not be understood as preempting state laws which legalize trafficking in marijuana because that would mean the CSA violates the anti-commandeering doctrine. See In re State Question 807, 2020 OK 57, 468 P.3d 383. The anti-commandeering doctrine operates as a limit on federal preemption. "We have always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power to directly compel the States to require or prohibit those acts." Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1477 (2018) (quotation omitted).
¶9 The CSA does not violate the anti-commandeering doctrine by preempting state laws which undermine its purpose and objectives. The CSA contains no direct mandate for the states to adopt drug enforcement regulations which mirror its provisions; the CSA merely prohibits certain conduct on behalf of individuals. Congress anticipated that states would adopt regulatory schemes that are generally complementary to federal law, even if not perfectly consistent with the CSA. Sanctioning activity that is proscribed by federal law, however, is in no sense complementary.
¶10 SQ 819's proposed amendments clearly present a substantial obstacle to Congress's objectives expressed in the CSA to control the production, sale, and use of controlled substances. SQ 819 is preempted by federal law and, thus, fails to comply with the Oklahoma Constitution. Accordingly, I cannot find that it is fit for submission to the people of Oklahoma.

FOOTNOTES

1 Article V, § 2 of the Oklahoma Constitution states:
The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.
 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1990 OK 75, 797 P.2d 326, 61 OBJ 1655, Initiative Petition No. 344, State Question No. 630, In reDiscussed
 1994 OK 27, 870 P.2d 782, 65 OBJ 886, In re Initiative Petition No. 358, State Question No. 658Discussed
 2016 OK 51, 376 P.3d 250, IN RE INITIATIVE PETITION NO. 409, STATE QUESTION NO. 785Discussed
 2020 OK 44, 465 P.3d 1259, IN RE: INITIATIVE PETITION No. 426 STATE QUESTION No. 810Discussed
 2020 OK 57, 468 P.3d 383, IN RE: STATE QUESTION No. 807, INITIATIVE PETITION No. 423Discussed at Length
 2022 OK 30, IN RE: STATE QUESTION No. 820 INITIATIVE PETITION No. 434Discussed at Length
 1982 OK 15, 649 P.2d 545, Initiative Petition No. 315, State Question No. 553, In reDiscussed
Title 34. Initiative and Referendum
 CiteNameLevel

 34 O.S. 3, Petitions and SignaturesCited
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering DeadlineDiscussed

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA